**UNITED STATES DISTRICT COURT**

**NORTHERN DISTRICT OF CALIFORNIA**

**SAN JOSE DIVISION**

| | |
|---|---|
| G & G CLOSED CIRCUIT EVENTS, LLC,<br>Plaintiff,<br>v.<br>RAMON MACIAS, et al.,<br>Defendants. | Case No. 20-cv-02916-BLF<br><br>**ORDER GRANTING IN PART AND DENYING IN PART PLAINTIFF'S RENEWED MOTION FOR DEFAULT JUDGMENT**<br><br>[Re: ECF 30] |

The Clerk of Court entered default against Defendants Ramon Macias, individually and d/b/a Los Compadres Bar & Grill, and Los Compadres Bar& Grill, Inc., an unknown business entity d/b/a Los Compadres Bar & Grill (collectively, "Defendants"), after Defendants failed to respond to the summons and complaint within the time prescribed by the Federal Rules of Civil Procedure. ECF 14. Before the Court is Plaintiff G&G Closed Circuit Events, LLC's motion for default judgment. Mot., ECF 29-1. Defendants, not having appeared in this action to date, have not opposed the motion. Pursuant to Civil Local Rule 7-1(b), the Court finds this matter for suitable for resolution without oral argument. For the reasons that follow, the Court GRANTS IN PART and DENIES IN PART Plaintiff's motion for default judgment.

**I.  BACKGROUND**

Plaintiff is a commercial distributor and licensor of closed-circuit sports and entertainment programming. Compl. ¶ 21; Gagliardi Decl., ECF 15-2 ¶ 3. Plaintiff alleges that it owns exclusive nationwide commercial distribution (closed-circuit) rights to the *Saul "Canelo" Alvarez v. Daniel Jacobs WBA/WBC/IBF Middleweight Championship Fight Program*, which was telecast nationally on May 4, 2019, including all under-card bouts and fight commentary (collectively, the "Program"). Compl. ¶ 18; Gagliardi Decl., ECF 15-2 ¶¶ 3-4, Exh. 1 at 10.

1    Plaintiff then sublicensed the right to publicly exhibit the Program to various commercial
2    entities throughout California and North America. Compl. ¶ 19; Gagliardi Decl. ¶ 3. Plaintiff
3    alleges that Defendants unlawfully intercepted and exhibited the Program at their commercial
4    establishment, Los Compadres Bar & Grill, located at 4126 Monterey Road, San Jose, California
5    95111. Compl. ¶¶ 12, 23-24; Gagliardi Decl. ¶¶ 3, 7, 9-11.

6    On April 28, 2020, Plaintiff filed this action for violation of 47 U.S.C. §§ 553 and 605, conversion, and violation of California Business and Professions Code §§ 17200 *et seq*. *See generally* Compl. Magistrate Judge Susan van Keulen denied Plaintiff's original motion for default judgment because "inadequacies in Plaintiff's complaint and the affidavit of its investigator [left] open the possibility of disputes concerning material facts and therefore weigh against entry of default judgment." ECF 17 at 5. Judge van Keulen provided Plaintiff the opportunity to file an amended complaint or renewed motion for default judgment that rectified the concerns stated in the order and "state[d] with particularity sufficient facts to establish Defendants' liability." *Id*. Plaintiff subsequently declined magistrate judge jurisdiction, ECF 19, and the case was reassigned to the undersigned, ECF 21. Due to a failure of Plaintiff to comply with the requirements of Judge van Keulen's order, this Court issued an order to show cause. ECF 25. Plaintiff responded to that order, ECF 26, and on April 8, 2021, the Court discharged the order to show cause and required Plaintiff to file an amended complaint or renewed motion for default judgment by May 7, 2021. ECF 28. On May 7, 2021, Plaintiff filed a renewed motion for default judgment. Mot.

In the present motion, Plaintiff seeks default judgment as to its claims under 47 U.S.C. §§ 553 and 605 and for conversion. ECF 30 ¶ 4(c)(4)-(5); *see also* Mot. at 4 ("To prevail under 47 U.S.C. § 605 or 47 U.S.C. § 553 . . . "). Plaintiff does not seek default judgment as to its claim under California Business and Professions Code §§ 17200 *et seq.* Plaintiff acknowledges that it may recover only under either 47 U.S.C. § 553 or § 605, and requests that this Court find liability under § 605. Mot. at 6 fn. 3. Accordingly, Plaintiff presents its damages request pursuant to § 605. *See id*. at 11-17. Plaintiff further contends that, notwithstanding that request, "if the Court were still to determine that it is more proper to evaluate Plaintiff's claim under 47 U.S.C. § 553,

2

1  Plaintiff['s] . . . damages request is well within the lower damages range under 47 U.S.C. § 553."
2  *Id*. at 7.

## II. LEGAL STANDARD

After entry of default, a court may, in its discretion, enter default judgment. *See* Fed. R. Civ. P. 55; *Aldabe v. Aldabe*, 616 F.2d 1089, 1092 (9th Cir. 1980). Before entering default judgment, the Court must assess the adequacy of the service of process on the party against whom default is requested. *See Trustees of ILWU-PMA Pension Plan v. Coates*, No. C–11–3998 EMC, 2013 WL 556800, at *4 (N.D. Cal. Feb. 12, 2013). The Court must also determine whether it has subject matter jurisdiction over the action and personal jurisdiction over the defaulted defendant. *Id*. at *3–4.

If the Court concludes that the defaulted defendant was properly served and that the Court has jurisdiction, the Court must next consider whether default judgment is appropriate, considering seven factors set forth by the Ninth Circuit: (1) the possibility of prejudice to the plaintiff; (2) the merits of plaintiff's substantive claims; (3) the sufficiency of the complaint; (4) the sum of money at stake in the action; (5) the possibility of dispute concerning material facts; (6) whether default was due to excusable neglect; and (7) the strong policy under the Federal Rules of Civil Procedure favoring decisions on the merits. *Eitel v. McCool*, 782 F.2d 1470, 1471–72 (9th Cir. 1986). In considering these factors, the Court takes all well-pleaded factual allegations in the complaint as true, except those concerning damages. *Televideo Sys., Inc. v. Heidenthal*, 826 F.2d 915, 917–18 (9th Cir. 1987).

## III. DISCUSSION

### A. Service and Jurisdiction

Plaintiff filed proofs of service of the summons and complaint on Defendant Ramon Macias, both personally and as agent for service of process for Defendant Los Compadres Bar & Grill, Inc. ECF 10; ECF 11. A sworn proof of service constitutes "prima facie evidence of valid service which can be overcome only by strong and convincing evidence." *Securities & Exchg. Comm'n v. Internet Solutions for Business, Inc*., 509 F.3d 1161, 1166 (9thCir. 2007). Accordingly, based on the sworn proofs of service filed by Plaintiff, the Court concludes that service was

3

proper.

The Court has subject matter jurisdiction over this matter because federal statutes are at issue, and the Court can exercise supplemental jurisdiction over the state law claims. 28 U.S.C. §§1331, 1367. The requirement of personal jurisdiction is also satisfied because Defendants were served, reside, and do business in California. *See J. McIntyre Machinery, Ltd. v. Nicastro*, 564 U.S.873, 880-81 (2011).

**B.** *Eitel* **Factors**

Having concluded that the threshold requirements of service and jurisdiction are met, the Court considers the *Eitel* factors. For the reasons discussed below, the *Eitel* factors support default judgment on two of Plaintiff's claims.

The first *Eitel* factor weights in favor of the entry of default. If the motion for default judgment were to be denied, then Plaintiff would likely be left without a remedy given Defendants' failure to appear or otherwise defend this action. *See Pepsico, Inc. v. Cal. Sec. Cans,* 238 F.Supp.2d 1172, 1177 (C.D. Cal. 2002). The sixth factor also weighs in favor of the entry of default as Plaintiff properly served Defendants and there is no evidence in the record that Defendant's failure to appear and otherwise defend this action was the result of excusable neglect. *See* ECF 10; ECF 11.

Factor four, the amount of money at stake in the action is also neutral. In the complaint, Plaintiff seeks $10,000 in statutory damages pursuant to 47 U.S.C. § 605(e)(3)(C)(i)(II), $100,000 in statutory damages pursuant to 47 U.S.C. § 605(e)(3)(C)(ii), $10,000 in statutory damages pursuant to 47 U.S.C. § 553(c)(3)(A)(ii), $50,000 in statutory damages pursuant to 47 U.S.C. § 553(c)(3)(B), compensatory, punitive, and exemplary damages for conversion, and restitution pursuant to California Business and Professions Code §§ 17200, *et seq*. *See* Compl. In the instant motion, however, Plaintiff is not pursuing relief under California Business and Professions Code §§ 17200, *et seq*. Plaintiff is seeking $21,875 for violations pursuant to 47 U.S.C. § 605 or, in the alternative, pursuant to 47 U.S.C. § 553. ECF 30 ¶ 5; Mot. at 7 ("Notwithstanding this, if the Court were still to determine that it is more proper to evaluate Plaintiff's claim under 47 U.S.C. § 553, Plaintiff notes that its damages request is well within the lower damages range under 47 U.S.C. §

4

553"). Plaintiff is also seeking $875 in damages for conversion. ECF 30 ¶ 6. While this request is far from trivial, the damages sought are statutory and the amount is left to the Court's discretion. The fifth factor is neutral. Because Defendants have not answered the complaint or otherwise appeared in this action, the possibility of a dispute concerning material facts is unknown.

The seventh *Eitel* factor—balancing the policy consideration that whenever reasonably possible cases should be decided on their merits—weighs against default judgment. *Eitel*, 782 F.2d at 1472.

Having determined that on balance *Eitel* factors one, four, five, six, and seven support Plaintiff's motion for default judgment, the Court turns to the merits of Plaintiff's substantive claims and the sufficiency of the evidence—the second and third *Eitel* factors. These factors require Plaintiff to state a claim on which it may recover. *Kloepping v. Fireman's Fund*, No. C 94-2684 TEH, 1996 WL 75314, at *2 (N.D. Cal. Feb. 13, 1996) (citing *Danning v. Lavine*, 572 F.2d 1386, 1388 (9th Cir.1978)). "Upon entry of default, the facts alleged to establish liability are binding upon the defaulting party." *Danning*, 572 F.2d at 1388. "However, it follows from this that facts which are not established by the pleadings of the prevailing party, or claims which are not well-pleaded, are not binding and cannot support the judgment." *Id*. Plaintiff makes claims for (1) violation of 47 U.S.C. § 605; (2) violation of 47 U.S.C. § 553; and (3) conversion.

47 U.S.C. § 605 "prohibits commercial establishments from intercepting and broadcasting to its patrons satellite cable programming." *J & J Sports Prods., Inc. v. Mosley*, No. 10–5126, 2011 WL 2066713, at *3 (N.D. Cal. Apr.13, 2011). In contrast, 47 U.S.C. § 553 "prohibits a person from intercepting or receiving or assisting in intercepting or receiving any communications service offered over a cable system." *Id*. (emphasis in original). "A signal pirate violates § 553 if he intercepts a cable signal, he violates § 605 if he intercepts a satellite broadcast. But he cannot violate both by a single act of interception." *J&J Sports Productions, Inc. v. Man Thi Doan*, No. C-08-00324 RMW, 2008 WL 4911223, at *2 (N.D. Cal. Nov. 13, 2008); *see also J & J Sports Productions, Inc. v. Coria*, No. C 12–05779 JSW, 2015 WL 1089044, at *3–4 (N.D. Cal. Feb. 27, 2015) ("Plaintiff may not recover under both 47 U.S.C. § 605 and 47 U.S.C. § 553.") (citations omitted).

Plaintiff alleges both a violation of 47 U.S.C. § 605 and § 553. *See* Compl. ¶¶ 17-35. Plaintiff seeks statutory and enhanced damages under § 605 or, in the alternative, under § 553. *See* Mot. at 11-17. Nonetheless, the Court finds that *Eitel* factors two and three weigh against the entry of default for Plaintiff's claim under § 605. The complaint states that "[t]he Program originated via satellite uplink and was subsequently re-transmitted to cable systems and satellite companies to Plaintiff's sub-licensees" and that "Title 47 U.S.C. § 605(a), prohibits the unauthorized interception, receipt, publication and use of communications, including satellite television signals, such as the transmission of the Program for which Plaintiff G & G Closed Circuit Events, LLC had the distribution rights thereto." Compl. ¶¶ 22, 26. The pleading is silent, however, as to whether Defendants intercepted the Program via a cable signal or via a satellite transmission. *See id.* ¶ 23 ("On Saturday, May 4, 2019, in violation of Plaintiff G & G Closed Circuit Events, LLC rights and federal law, Defendants intercepted, received and published the Program at Los Compadres Bar & Grill."). Because Plaintiff did not allege that Defendants intercepted a satellite transmission—as opposed to a cable signal—in its complaint, it is not a factual allegation that can be taken as true. "Indeed, the fact that violations of both 605 and 533 were alleged in the Complaint indicates that Plaintiff is unable to specify the type of transmission." *See Coria*, 2015 WL 1089044, at *4.

Nor is there evidence that the Program was received or intercepted simultaneously from both a cable signal and a satellite broadcast. *See J & J Sports Prods., Inc. v. Guzman*, No. C 08-05469 MHP, 2009 WL 1034218, at *2 (N.D. Cal. Apr. 16, 2009) ("The court is unpersuaded that a perpetrator would commit double piracy by using both a cable box and a satellite to broadcast a single simultaneous program."). Further, investigator John Poblete did not mention whether there was a cable box or a satellite dish at Defendants' premises or how the Program was transmitted. Poblete Decl., ECF 29-3; Poblete Aff., ECF 15-4. Because of the prominent placement required for a satellite dish in comparison to a cable box, the Court finds the lack of evidence as persuasive that the programming came from a cable signal. *See J & J Sports Prods., Inc. v. Wood*, No. 11-CV-1160 PJH JSC, 2011 WL 6961334, at *4 (N.D. Cal. Nov. 2, 2011), *report and recommendation adopted,* No. C 11-1160 PJH, 2012 WL 33258 (N.D. Cal. Jan. 6, 2012) ("Here,

the investigator looked for both a satellite dish and a cable box and did not see either. In similar situations courts have found that as between the two it is less likely that a satellite dish was used"); *Guzman,* 2009 WL 1034218, at *2 ("Given that a cable box is more easily hidden, the court finds that defendants violated section 553, but not section 605.")*; Mosley,* 2011 WL 2066713, at *3 ("Since Mr. Gravelyn saw neither a cable box nor a satellite dish, J & J cannot determine the precise means used to access the program."); *J & J Sports Prods. v. Ro*, No. 09–02860, 2010 WL 668065, at *3 (N.D. Cal. Feb.19, 2010) ("Without better homework by the investigator, the Court will not rule out the presence of a cable box."). In sum, the Court finds that Plaintiff has failed to state a claim for relief under § 605.

Plaintiff has, however, sufficiently alleged a basis for relief under 47 U.S.C. § 553. Plaintiff has established through Poblete's affidavit and declaration, *see* Poblete Decl.; Poblete Aff., that Defendants exhibited the Program without permission. *See J&J Sports Productions, Inc. v. Sergura,* No. C 12–01702 JSW, 2014 WL 1618577, at *4 (N.D. Cal. Apr. 21, 2014); *Coria,* 2015 WL 1089044, at *4; *Man Thi Doan*, 2008 WL 4911223, at *3. While Judge van Keulen found that Poblete did not claim in his affidavit to "have seen any part of the main event fight, the under-card bouts, or the fight commentary to which Plaintiff's rights pertain," ECF 17 at 5, Poblete's newly-submitted declaration rectifies this problem.[1] In particular, Poblete states that he watched Plaintiff's Program inside Los Compadres. Poblete Decl. ¶ 4. He also submitted a video that he filmed while at Los Compadres on May 4, 2019. *Id*. The Court has reviewed the video, and finds that it supports Poblete's declaration that he watched at least part of the Program's marquee fight between Alvarez and Jacobs on Defendants' televisions. The Court finds that Plaintiff has adequately stated a claim under 47 U.S.C. § 553. *See Danning*, 572 F.2d at 1388.

Plaintiff has also stated a claim for relief for conversion under California Civil Code § 3336. The elements of a conversion claim in California are "(1) ownership or right to possession of property, (2) wrongful disposition of the property right and (3) damages." *G.S. Rasmussen &*

---

[1] The Court affords no weight to the following statement in Poblete's declaration: "I have been assured by Plaintiff's counsel that this particular footage was indeed the live telecast of Plaintiff's *Program*, as Alvarez and Jacobs had never fought one another ever before . . ." Poblete Decl. ¶ 5. This statement does nothing to establish Poblete's knowledge about the Program or the fight.

7

*Assoc. v. Kalitta Flying Serv.*, 958 F.2d 896, 906 (9th Cir.1992). Plaintiff alleges ownership over the nationwide distribution rights for the Program, Defendants' misappropriation of this ownership right through the intentional and unlawful interception of the Program, and damages. *See* Compl. According to Gagliardi's declaration, the commercial sublicense fee to broadcast the Program would have cost Defendants $875. Gagliardi Decl. ¶ 8, Exh. 1 at 10.

In sum, the *Eitel* factors weigh in favor of entering default judgment against Defendants with respect to Plaintiff's claims under 47 U.S.C. § 553 and for conversion and against entering default judgment against Defendants with respect to Plaintiff's claim under 47 U.S.C. § 605. The Court GRANTS the motion for default judgment on Plaintiff's claims under 47 U.S.C. § 553 and for conversion and DENIES the motion for default judgment on Plaintiff's claim under 47 U.S.C. § 605.

**IV.     RELIEF TO BE AWARDED**

A plaintiff is required to prove all damages sought in the complaint. *See Tele Video Sys., Inc. v. Heidenthal,* 826 F.2d 915, 917–18 (9th Cir.2002). Additionally, no relief sought may be different in kind, or exceed in amount, than that which is demanded in the pleadings. *See* Fed. R. Civ. P. 54(c). If the facts necessary to determine the damages are not contained in the pleadings, or are legally insufficient, they will not be established by default. *See Cripps v. Life Ins. Co. of N. Am.,* 980 F.2d 1261, 1267 (9th Cir.1992).

**A. Damages Pursuant to 47 U.S.C. § 605**

Plaintiff seeks a total of $21,875 in statutory and enhanced under 47 U.S.C. §§ 605(e)(3)(C)(i)(II) and (e)(3)(C)(ii). ECF 30 ¶ 5. Because this Court has denied Plaintiff's motion with respect to the § 605 claim, the Court analyzes Plaintiff's request for damages under § 553.[2]

**B. Damages Pursuant to 47 U.S.C. § 553**

Under 47 U.S.C. § 553(c)(3)(A)(ii), Plaintiff is entitled to damages of no less than $250,

---

[2] In *G & G Closed Circuit Events, LLC v. Castro*, No. 12–04649, 2013 WL 871913, at *3 (N.D. Cal. Mar. 7, 2013), Judge Alsup analyzed plaintiff's damages under § 553 after determining plaintiff failed to satisfy a § 605 claim, notwithstanding the plaintiff's failure to seek damages under § 553. *See also Sergura*, No. C 12–01702 JSW, 2014 WL 1618577, at *4 (N.D. Cal. Apr. 21, 2014); *G & G Closed Circuit Events, LLC v. Miller*, No. 20-0345, ECF 31.

8

but no more than $10,000, in an amount the Court considers just. "The Court may also enhance the award of damages by up to $50,000 if it finds that the conduct was 'committed willfully and for the purposes of commercial advantage or financial gain.'" *J & J Sports Prods., Inc. v. Seldner,* No. 10–5137, 2011 WL 2650961, at *1 (N.D. Cal. Jul.6, 2011) (quoting 47 U.S.C. § 553(c)(3)(B)).

District courts consider different factors in determining damages, including "use of cover charge, increase in food price during programming, presence of advertisement, number of patrons, number of televisions used, and impact of the offender's conduct on the claimant." *J & J Sports Productions, Inc. v. Concepcion*, No. C 10– 05092 WHA, 2011 WL 2220101, at *4 (N.D. Cal. June 7, 2011); *see, e.g., G & G Closed Cir. Events LLC v. Govan*, No. C 13-05488 SI, 2014 WL 2194520, at *1 (N.D. Cal. May 23, 2014) ("[T]hree separate head counts while Ms. Poblete was present showed the number of patrons present to be 14, 14, and 16 people, respectively. Thus, the record is unclear on whether the establishment actually profited from the violation." (internal citations omitted)). Courts also consider whether a defendant is a repeat offender. *See, e.g., J & J Sports Prods., Inc. v. Paniagua,* No. 10–05141, 2011 WL 996257, at *2 (N.D. Cal. Mar.21, 2011) (awarding enhanced damages for a repeat offender). In addition, courts consider the actual cost of a commercial license, defendant's incremental profits, and the need to deter piracy. *See, e.g., Mosley,* 2011 WL 2066713, at *5 (calculating actual losses based on the license fee and an estimate of defendant's potential profits); *J & J Sports Prods. v. Ho,* 10–01883, 2010 WL 3912179, at *1 (N.D. Cal. Oct.5, 2010) (stating that "[a] traditional method of determining statutory damages is to estimate either the loss incurred by the plaintiff or the profits made by the defendants" (internal citations omitted)).

Here, Plaintiff's papers "acknowledge[] that certain hallmark enhancement factors (e.g., repeat offender status, cover charge, or advertising) are not present in this case." Mot. at 14. Poblete's affidavit does not suggest otherwise, and states only that three separate headcounts while Poblete was present at Defendants' establishment revealed that the number of patrons was 31, 34, and 35 people, respectively. Poblete Aff. at 2. The Court finds that the record is unclear on whether Defendants actually profited from the violation. In addition, there is no showing that

9

1    Defendants advertised the Program prior to the broadcast or that Defendants have engaged in prior
2    violations. *Id*.

3    In light of the all of the above, the Court finds that an award of modest damages would be
4    just in this case. Accordingly, the Court AWARDS Plaintiff $875 in statutory damages under
5    Section 553(c)(3)(A)(ii), which represents the cost of the commercial sublicense fee to broadcast
6    the Program according to Gagliardi's declaration. Gagliardi Decl. ¶ 8, Exh. 1 at 10; *see Miller*,
7    ECF 31 at 67 ("the Court awards Plaintiff $800 in statutory damages under Section
8    553(c)(3)(A)(ii), which represents the cost of the commercial sublicense fee"); *Govan*, 2014 WL
9    2194520, at *2 ("$2,000 sufficiently compensates plaintiff, and this case does not present a set of
10   circumstances where an additional award might be warranted."); *Sergura*, 2014 WL 1618577, at
11   *5 (awarding statutory damages equal to the cost of a commercial license where the establishment
12   was half-full, there was no cover charge, and there was no indication that food or beverage prices
13   increased as a result of the unlawful broadcast); *Wood*, 2011 WL 6961334, at *6 (N.D. Cal. Nov.
14   2, 2011) ("the Court recommends awarding Plaintiff $2,000 in statutory damages under 47 U.S.C.
15   § 553(c)(3)(A)(ii) representing Plaintiff's actual losses based on the license fee.").

16   With respect to enhanced damages, the Court finds that evidence supports an inference that
17   Defendants acted willfully in intercepting and exhibiting the Program. *See* 47 U.S.C. §
18   553(c)(3)(B); *Sergura*, 2014 WL 1618577, at *5. Defendants benefitted from the illegal
19   interception by avoiding paying the licensing fee and presumably attracting additional patrons
20   who spent more time in the establishment watching the Program. *See Wood*, 2011 WL 6961334, at
21   *6. Nonetheless, Plaintiff's enhanced damages request far exceeds comparable awards by courts in
22   this district. *See Sergura*, 2014 WL 1618577, at *5 (awarding "$2,400 in enhanced damages,
23   which is double the statutory award," to defer future violations); *Wood*, 2011 WL 6961334, at *7
24   ("In light of Defendant's affirmative misconduct and in order to deter future willful violations, the
25   Court recommends imposing an enhanced damages award of $5,000."); *Seldner*, 2011 WL
26   2650961, at *3 (declining to award enhanced damages where Plaintiff offered only "the mere
27   assertion that . . . defendant acted willfully"). In light of this caselaw, Defendants' affirmative
28   misconduct, and in order to deter future willful violations, the Court AWARDS Plaintiff $1,750 in

1 enhanced damages, which is double the statutory award.

### C. Damages for Conversion

Plaintiff also seeks $875 in damages for conversion. Mot. at 17. The elements of conversion are (1) ownership of a right to possession of property; (2) wrongful disposition of the property right of another, and (3) damages. *See G.S. Rasmussen & Assoc*, 958 F.2d at 906. Plaintiff alleges ownership over the nationwide distribution rights for the Program, Defendants' misappropriation of this ownership right through the intentional and unlawful interception of the Program, and damages. *See* Compl. The commercial sublicense fee to broadcast the Program would have cost Defendants $875. Gagliardi Decl. ¶ 8, Exh. 1 at 10. Plaintiff's request is appropriate and the Court AWARDS Plaintiff $875 in damages for conversion.

### D. Costs and Attorney's Fees

Reasonable attorneys' fees and costs may be awarded pursuant to 47 U.S.C. § 553(c)(2). Plaintiff's motion requests the opportunity to submit evidence in support of its recovery of attorneys' fees and relevant costs. ECF 30 ¶ 7. Plaintiff SHALL file a properly supported request for reasonable attorneys' fees and costs within 14 days of this Order.

## V. ORDER

For the foregoing reasons, the Court rules as follows:

(1) Plaintiff's motion for default judgment is GRANTED as to the claims under 47 U.S.C. § 553 and for conversion;

(2) Plaintiff's motion for default judgment is DENIED as to the claim under 47 U.S.C. § 605;

(3) The Court AWARDS Plaintiff $3,500 in damages ($875 in statutory damages, $1,750 in enhanced damages, and $875 for conversion damages); and

(4) Plaintiff SHALL file a properly supported request for reasonable attorneys' fees and costs within 14 days of this Order.

**IT IS SO ORDERED.**

Dated: May 21, 2021

BETH LABSON FREEMAN
United States District Judge